UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

STEVEN I. DUKE,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        No.:   3:18-CV-375-TAV-HBG
                                         )
KROGER LIMITED PARTNERSHIP I,            )
d/b/a THE KROGER COMPANY,                )
                                         )
        Defendant.                       )

## **MEMORANDUM OPINION**

This case concerns alleged discrimination in violation of Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq*. Plaintiff, formerly employed by Defendant, claims that his position was terminated due to his age and his association with his disabled daughter, and also in retaliation for his complaints about age and associational discrimination. Now before the Court is Defendant's motion for summary judgment [Doc. 46], to which Plaintiff responded [Docs. 54, 60] and Defendant replied [Doc. 64]. Defendant has also objected to summary judgment evidence relied upon by Plaintiff [Doc. 63], to which Plaintiff responded [Doc. 65]. For the reasons that follow, Defendant's objections [Doc. 63] will be **SUSTAINED**, and Defendant's motion [Doc. 46] will be **GRANTED**.

# I.    BACKGROUND

On June 7, 2007, Plaintiff Steven Duke ("Duke") was hired as a Pharmacy Manager by Defendant Kroger Limited Partnership ("Kroger") [Doc. 47 p. 8; Doc. 60 p. 1]. In 2010, Duke was demoted to the position of Pharmacy Co-Manager [*Id.*]. In 2016, the pharmacy at which Duke worked failed two compliance audits related to Drug Enforcement Agency regulations, which resulted in the demotion and reassignment of the store's Pharmacy Manager [Doc. 47 pp. 8-9; Doc. 60 p. 2]. Duke applied for this position on November 19, 2016, but was informed just one day later that the position had been filled [Doc. 47 p. 9; Doc. 60 p. 4]. Duke then contacted Pharmacy Coordinator Jim Raines ("Raines"), who informed Duke that the position had, in fact, not yet been filled[1] [*Id.*]. Duke testified in his deposition that Raines suggested that Kroger wanted to hire a more recent graduate [Doc. 60 p. 4; Doc. 60-4 p. 225]. Meanwhile, in his deposition, Raines stated that Duke was ineligible for the position because he was part of the staff that failed the audits [Doc. 47 p. 9; Doc. 47-3 pp. 65-66].

Shortly thereafter, Raines interviewed and hired 29-year-old Kristin Carr ("Carr") for the Pharmacy Manager position [Doc. 47 p. 9; Doc. 60 p. 4]. Duke then filed a formal complaint of age discrimination [Doc. 60 p. 4]. In April 2017, Duke received his annual performance review and was rated as "Needs Improvement" [Doc. 47 p. 9; Doc. 60 p. 6]. Pursuant to Kroger's policy for employees ranked as "Needs Improvement," Carr and

---

[1] The reason for this quick rejection appears to be that the application period for the position was closed, meaning that Duke's application triggered an autogenerated rejection email [Doc. 47 p. 9; Doc. 47-2 p. 37].

2

Raines issued a Performance Improvement Plan ("PIP") for Duke [Doc. 47 pp. 9-10; Doc. 60 pp. 8-9]. Duke was subject to this PIP until August 2017, at which point it was determined that he had successfully satisfied the PIP requirements [Doc. 47 p. 11; Doc. 60 p. 10].

Meanwhile, on August 12, 2017, Duke ordered a bottle of Tri-Chlor—a medicine used to treat moles, warts, skin tags, actinic keratosis, and genital warts [Doc. 47 p. 11 n.2; Doc. 60 p. 10 n.40]. The parties dispute what happened to the Tri-Chlor when it arrived at the pharmacy. Kroger points to the testimony of Lead Pharmacy Technician Susan Dawson ("Dawson"), who testified that Duke put the bottle in his pocket [Doc. 47 p. 11; Doc. 47-5 p. 34]. Duke, on the other hand, stated that he placed the medicine in the store inventory [Doc. 60 p. 11; Doc. 60-4 pp. 119-22]. Dawson then reported this incident to Carr, who searched the pharmacy, was unable to find the Tri-Chlor, and then reported the matter to Raines and the Kroger Asset Protection Department [Doc. 47 p. 7; Doc. 60 pp. 11-13]. Asset Protection officials Danielle Bergum ("Bergum") and Dan Davis ("Davis") then began an investigation [Doc. 47 p. 12; Doc. 60 p. 13]. On September 8, 2017, both Dawson and Duke met with Raines, Bergum, and Davis to discuss the investigation [Doc. 47 pp. 12-13; Doc. 60 p. 15]. At the end of this interview, Duke was placed on leave pending the results of the investigation and review of the matter by human resources [Doc. 47 p. 13; Doc. 60 p. 17]. Notably, Duke testified that Pharmacy Technician Melinda

3

Moses ("Moses") told him that the Tri-Chlor was subsequently found in the pharmacy,[2] but Moses denied that she ever made that statement [Doc. 60-4 pp. 157-58; Doc. 60-12 pp. 38-39]. Finally, on September 22, 2017, the District Human Resources Manager Charles Ervin ("Ervin") made the decision to terminate Duke for theft [Doc. 47 p. 13; Doc. 60 p. 18].[3]

In January 2018, Duke filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which then issued Duke a Notice of Right to Sue [Doc. 20 ¶¶ 98-99; Doc. 20-6; Doc. 20-7]. Thereafter, on September 10, 2018, Duke initiated this lawsuit against Kroger alleging violations of the ADA, the ADEA, and the THRA [Doc. 1 ¶ 95; Doc. 20 ¶ 95].

## II. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully

---

[2] This testimony is the subject of Kroger's motion to exclude summary judgment evidence [Doc. 63].

[3] Duke's Separation Letter stated the reason for the separation as "TERMED FOR THEFT OF PRODUCT" [Doc. 1-7 p. 1].

4

oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

## III.   ANALYSIS

### A.    Hearsay Evidence

As noted, Duke argued in his response to Kroger's motion for summary judgment that Moses informed him that the Tri-Chlor in question was found in the pharmacy, which would undermine Kroger's claim that Duke was fired because he stole this medication [Doc. 60-4 pp. 157-58].  Kroger now moves to exclude this evidence as inadmissible hearsay.  "Hearsay evidence may not be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Duke raises three arguments why his testimony should be admissible.

First, Duke contends that Moses's statement is admissible under Federal Rule of Evidence 801(d)(2), which enumerates certain statements that are "not hearsay" [Doc. 65 p. 2].  Specifically, Duke points to Rule 801(d)(2)(D) which says that an opposing party's statement is not hearsay when it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it

5

existed[.]" "A statement is not hearsay under Rule 801(d)(2)(D) when it concerns a matter within the scope of the declarant's employment—there is no requirement that a declarant be directly involved in the adverse employment action." *Back v. Nestle USA, Inc*., 694 F.3d 571, 577 (6th Cir. 2012). On this point, Duke relies on *Back*, in which the Human Resources Director of the defendant company allegedly said "there was a plan to get rid of the three oldest employees and highest paid team leaders . . . ." *Id*. at 577. The Sixth Circuit concluded that this "alleged statement—which relates to terminating employees— plainly concerns a matter within the scope of the Human Resources Director's job" because he was "responsible for overseeing the human-resource policies, procedures, practices, benefits, and overall employee relations, and his job includes involvement in employee-performance issues generally and termination specifically." *Id*.; *see also Carter v. Univ. of Toledo*, 349 F.3d 269, 276 (6th Cir. 2003) (concluding that comments made by a University Vice Provost regarding the racial composition of the faculty were within the scope of his employment because one of his job duties was ensuring compliance with affirmative action). These cases, however, provide little to help Duke here. Moses's alleged statement to Duke that the missing medication was found was not made within the scope of her employment as a *pharmacy technician*. Moses was not Duke's supervisor. She was not part of management who investigated the alleged theft. She also was not involved with the human resources personnel who decided whether to terminate Duke. In fact, it does not appear that Moses had any connection to the search for the missing Tri-Chlor, the subsequent investigation, or the ultimate decision to terminate Duke. Moses

6

certainly was not empowered to make any such statement on behalf of Kroger. *See Jacklyn*, 176 F.3d at 928 ("There is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer.").

Second, Duke contends that Moses's statement is not being offered to prove the truth of the matter asserted [Doc. 65 p. 2]. "A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc*., 573 F.3d 365, 379 (6th Cir. 2009). Specifically, Duke contends that Moses's statement is admissible to explain his subsequent conduct, namely to explain why he emailed Raines stating "I would like to know when I will be permitted to return to work?" [Doc. 65 p. 2]. This Court finds that argument unpersuasive and somewhat disingenuous because Duke's motivation to contact Raines about his job status is of no import. If this Court were to accept Duke's testimony about Moses's statement only for this limited purpose, it would have absolutely no bearing on the pending summary judgment motion.

Finally, Duke contends that Moses's statement helps to explain Kroger's subsequent conduct of not reporting him to the police or to the Tennessee Board of Pharmacy [Doc. 65 p. 3]. That argument, however, also misses the mark. A hearsay statement may be admissible when only offered "to show its effect on the *listener* . . . ." *Biegas*, 573 F.3d at 379 (emphasis added). But Duke is the listener here, not Kroger or its employees. To consider how this proposed testimony impacted a decision of Kroger would require this

7

Court to accept the truth of the matter asserted, which is exactly what the rule against hearsay prohibits.

In sum, Duke has failed to show why Moses's out-of-court statement is not hearsay or is admissible under a hearsay exception. Accordingly, this Court will not consider that testimony moving forward.

### B. Age Discrimination

Duke claims that he was terminated by Kroger due to his age [Doc. 20 ¶ 94]. The ADEA provides that it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1).[4] Generally speaking, a plaintiff can prove an ADEA violation either with direct or circumstantial evidence. *Geiger v. Tower Auto*., 579 F.3d 614, 620 (6th Cir. 2009).

### 1. Direct Evidence of Age Discrimination

Direct evidence of discrimination is evidence which, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). "[O]nly the most blatant remarks, whose intent could be nothing other than to

---

[4] The language of the THRA models the federal statute, such that the two will be analyzed as one. *See* Tenn. Code Ann. § 4-21-401; *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) ("We apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA.").

8

discriminate on the basis of age, satisfy this criteria." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (internal quotation marks omitted). "[G]eneral, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Id.* (internal quotation marks omitted). Circumstantial evidence, by contrast, "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F.3d at 620 (internal quotation marks omitted). Whether advancing under a theory of direct evidence, circumstantial evidence, or both, the burden of persuasion remains on the plaintiff to demonstrate by a preponderance of the evidence that age was the but-for cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Geiger*, 579 F.3d at 620 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

In the present case, Duke has offered little direct evidence of age discrimination. Duke argues that Carr made ageist remarks to him during his PIP meeting, including suggestions that Duke was "a little bit traditional," needed to be more "jovial," and that she thought he was planning to retire [Doc. 60 pp. 8-9; Doc. 60-4 pp. 221-23]. This discussion primarily centered around Duke's alleged difficulty communicating with younger

9

pharmacy technicians [Doc. 60-4 p. 221]. As such, these statements standing alone "are insufficient to support a claim of age discrimination under a direct evidence theory, as it is not the case that their intent 'could be nothing other than to discriminate on the basis of age.'" *Almanza v. Sessions*, No. 3:15-cv-389, 2018 WL 5262092, at *6 (E.D. Tenn. May 25, 2018) (quoting *Sharp*, 726 F.3d at 794). Notably, Duke does not appear to contest that his age discrimination claim cannot be based on direct evidence. [*See* Doc. 60 p. 20]. As such, Duke's claim must proceed under a theory of circumstantial evidence.

## 2. Circumstantial Evidence of Age Discrimination

Discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Under this burden-shifting framework, a plaintiff first bears the burden of establishing a prima facie case of disparate treatment. *White v. Columbus Metro. Housing Authority*, 429 F.3d 232, 240 (6th Cir. 2005). Once Plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory explanation for its actions. *Seay v. Tenn. Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003). Finally, after the defendant articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the employer's explanation is pretext. *McDonnell Douglas*, 411 U.S. at 802-04, 807.

To set forth a prima facie case of age discrimination using circumstantial evidence, a plaintiff must establish four elements: "(1) he or she was a member of a protected age

class (i.e., at least forty years old); (2) he or she suffered an adverse employment action; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee." *Pierson v. Quad/Graphics Printing Corp*., 749 F.3d 530, 536 (6th Cir. 2014) (internal quotation marks omitted). The burden of establishing a prima facie case of age discrimination is not onerous. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014).

Even if a plaintiff can establish the elements of a prima facie case, he is not relieved of the burden to show that age was the but-for cause of the alleged discrimination, and that he was a victim of intentional discrimination based on his age. *Gross*, 557 U.S. at 177; *Geiger*, 579 F.3d at 620. Isolated or speculative connections between a plaintiff's alleged discriminatory treatment and his age are insufficient to meet this burden. *Peecook v. Nw. Nat'l Ins. Grp*., 156 F.3d 1231 (table), 1998 WL 476245, at *3 (6th Cir. Aug. 3, 1998) (per curiam). Furthermore, federal law does not prohibit all forms of mistreatment or hostility in the workplace, and personality conflicts between employees are not the business of federal courts. *See Blackshear v. Interstate Brands Corp*., 495 F. App'x 613, 617 (6th Cir. 2012) (finding that no viable federal claim existed where plaintiff demonstrated personal animus but could not show the animus was based on her protected status); *Baugham v. Battered Women, Inc*., 211 F. App'x 432, 438 (6th Cir. 2006) (finding that if the nature of an employee's environment, however unpleasant, is not due to his membership in a protected class, he has not been a victim of discrimination).

11

Duke has established a prima facie case for age discrimination, a point that Kroger does not appear to dispute at this stage of the litigation. He was fired from his job by Kroger when he was 62 years old—and was therefore unquestionably a member of a protected class who suffered an adverse employment action for a job for which he was qualified [Doc. 60 p. 21]. Duke was then replaced by Marla Berry, who, at 32 years old, is substantially younger than Duke [*Id.*]; *see Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) ("An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant.").

The burden now shifts to Kroger to show a legitimate, non-discriminatory reason for its actions. Kroger contends that it fired Duke from his position as Pharmacy Co-Manager because of his theft of Tri-Chlor [Doc. 47 p. 16]. As noted, Duke's Separation Letter stated the reason for the separation as "TERMED FOR THEFT OF PRODUCT" [Doc. 1-7 p. 1]. On its face, this stated reason is legitimate and not related to Duke's age. As such, under the *McDonnell Douglas* framework, the burden now returns to Duke to show that Kroger's proffered reason for his termination is merely pretextual.

With regard to pretext, the Sixth Circuit has stated:

> To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996). In other words, a plaintiff "must produce sufficient evidence from which the jury could reasonably reject the

12

defendant's explanation and infer that the defendants intentionally discriminated against" the employee. *Poe v. Brunswick Corp.*, No. 1:17-cv-202, 2019 WL 2753985, at *8 (E.D. Tenn. July 1, 2019) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)).

Furthermore, Kroger invokes the "honest belief" rule, which "comes in at the pretext stage and places an additional evidentiary burden on [a plaintiff]." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 705 (6th Cir. 2013) (citation omitted). Under this rule, "the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). When an employer makes an error "too obvious to be unintentional," a jury may be able to find that the employer had an "unlawful motive for doing so." *Rhoades v. Standard Parking Corp.*, 559 F. App'x 500, 507 (6th Cir. 2014) (internal quotation marks omitted). "Whichever method the plaintiff employs, he always bears the burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (alteration in original) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).

As noted, Kroger states that it fired Duke based on its belief that he stole Tri-Chlor from the pharmacy [Doc. 47 p. 16]. Kroger provides the following facts to support this honestly held belief: (1) Duke ordered the prescription Tri-Chlor for himself; (2) Dawson, who is older than Duke, reported that she saw him place the medicine in his pocket; (3) neither Carr nor neutral investigators from asset protection were able to locate the

13

missing medication in the pharmacy; (4) Duke was interviewed regarding the missing medication, during which he changed his story;[5] (5) Duke never located or otherwise explained where the medication was; and (6) Ervin, the ultimate decisionmaker in Duke's termination, was 54 and therefore also in the protected age category [Doc. 47 pp. 17-18, 20]. Based on this information, Ervin decided to terminate Duke because of the theft. On its face, it certainly appears that Kroger terminated Duke based on its honest belief that he stole the Tri-Chlor in question. *See Kurincic v. Stein Inc.*, 30 F. App'x 420, 425 (6th Cir. 2002) (concluding that an employer honestly believed an employee attempted to steal based, in part, on the fact that the employee changed his story when confronted about the theft).

Duke contends that this rationale was merely a pretext to justify his firing, but his response to Kroger's motion for summary judgment does not clearly articulate which theory of pretext he purports to demonstrate [Doc. 60 pp. 30-32]. Rather, Duke points to various factual disputes or discrepancies in treatment that ultimately have little bearing on his eventual termination. Either way, it appears that only the first theory is available to Duke—the reason had no basis in fact. To pursue the second theory—the proffered reason was not the true reason—Duke must first "admit[] the factual basis underlying the

---

[5] In the reply, Kroger also notes that in a text message to Moses, Duke said that he was suspended for "stealing some bottle of acetic acid I had [*sic*] ordered *for someone* about a month ago" [Doc. 64-2 p. 2 (emphasis added)]. As mentioned, Duke has testified that this "someone" was actually himself. Oddly, in this text message exchange, Duke also appears to implicate his ex-wife in this situation: "I guarantee you my x knows something about this" [Doc. 64 p. 9; Doc. 64-2 p. 3].

14

employer's proffered explanation and further admit[] that such conduct could motivate dismissal." *Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 349 (6th Cir. 2012) (alterations in original). He has not done so here. Nor can Duke proceed under the third theory—the reason was insufficient to motivate discharge—because he does not contend that theft is an insufficient reason to motivate an employer to discharge an employee. This Court will consider Duke's arguments under the theory of pretext that Kroger's stated reason for the termination had no basis in fact.[6]

Duke asserts that a jury could reject Kroger's conclusion that he stole from the pharmacy because, *inter alia*, the theft was never reported to the police or the pharmacy board; Duke would not have blatantly stolen a product in front of a co-worker he had previously accused of theft; Duke denied stealing the medication; Duke was never accused of theft during his entire career; and Duke would not throw his career away to steal medication he could afford [Doc. 60 pp. 30-31]. While some of these points are valid, they do not relate to pretext. The proper question is not whether a jury could find that Duke stole the Tri-Chlor or even whether he did in fact steal it; rather, the question is whether Kroger had an honest belief that he stole it and whether this rationale had any basis in fact. *See Chen v. Dow Chem. Co*., 580 F.3d 394, 401 (6th Cir. 2009) ("When an employer reasonably and honestly relies on particularized facts in making an employment decision,

---

[6] There is also some suggestion that the honest belief rule only applies to this first method of showing pretext. *See Joostberns v. United Parcel Serv*., 166 F. App'x 783, 794 n.5 (6th Cir. 2006).

15

it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." (internal quotation marks omitted)).

Duke claims that a reasonable jury could find that Kroger "jumped on the opportunity to fire Duke for an unsupported allegation of theft . . . ." [Doc. 60 p. 31]. This statement, however, is merely a conclusory allegation that the theft was a pretext to fire him, but it is not evidence of said pretext. In other words, Duke must demonstrate that the allegation of theft was "unsupported." *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (second alteration in original)). Duke highlights that Kroger employees investigating the missing Tri-Chlor initially noted that it was a "red flag" or "interesting" that the Tri-Chlor was ordered without a prescription, but they later agreed that a pharmacist is allowed to order personal prescription medications without the prescription in-hand [Doc. 60 pp. 13, 31]. As such, Duke contends that Kroger changed one of its reasons for firing him, which evidences pretext. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."). This line of argument is a bit of a red herring, however. On the one hand, Duke does appear to be correct that ordering medication for oneself before securing a prescription for it is permissible [Doc. 60-6 p. 143]. On the other hand, even if a pharmacist is technically *allowed* to order medication for himself, it certainly could appear suspicious if that medication subsequently went missing. Moreover, the record

16

citations relied upon by Duke do not fully support his argument. For instance, a letter from Ervin stated that Duke was fired in part because "he ordered prescription medication without having a prescription and *then took it without paying for it*." [Doc. 60-9 p. 20 (emphasis added)]. Next, Kroger's discovery responses indicated that Duke was terminated because he violated Kroger's policies "by ordering and *stealing a Tri-Chlor* . . . product, without a prescription and *without paying for it*" [Doc. 60-7 pp. 75-77 (emphasis added)]. In both statements, it is clear that the complaint is not that Duke merely *ordered* the medication for himself but that he *stole* the medication. The fact that these statements included superfluous information—Duke ordered the medication for himself—does not negate the stated reason for the termination—Kroger believed that Duke stole the medication.

Duke contends that he previously received positive employment evaluations and consistently performed in the top 25% of performance metrics, such that the "jury could weigh Duke's career against the questionable and made up reasons when assessing pretext" [Doc. 60 pp. 31-32]. Duke's past performance, however, is not relevant to whether Kroger later fired him for stealing. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 286 (6th Cir. 2012) ("[T]he fact that [plaintiff] was a reliable employee with a good employment record is not relevant, as it proves no more than that absent any misconduct on [plaintiff's] part, [defendant] was unlikely to terminate his employment." (internal quotation marks omitted)).

Duke next points to evidence of past ageist remarks allegedly made by Kroger employees, which can sometimes serve as evidence of pretext [Doc. 60 p. 32]. *See Clack v. Rock-Tenn Co.*, 304 F. App'x 399, 403-05 (6th Cir. 2008) (considering past discriminatory remarks as part of a pretext analysis). These pasts remarks, however, were not particularly direct—i.e., Duke complained that Carr said he was "a little bit traditional," needed to be more "jovial," and that she thought he was planning to retire [Doc. 60 pp. 8-9; Doc. 60-4 pp. 221-23]. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) ("[I]solated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." (internal quotation marks omitted)). Moreover, since Duke is attempting to prove pretext under the first theory of pretext, these remarks have no bearing on whether the Kroger decisionmakers had a reasonable basis in fact to conclude that Duke stole the medication he had ordered for himself.

Duke argues that the fact that Kroger "jumped on the theft accusation involving Duke—but totally rejected the theft accusation of Dawson—supports that Duke's alleged theft was not the real reason" for his termination [Doc. 60 p. 32]. This argument is unavailing, however, because the record contains no evidence concerning Kroger's investigation into Dawson's alleged theft, and Dawson is actually older than Duke in any event [Doc. 47 p. 17]; *see Chattman*, 686 F.3d at 349 ("The third category of pretext consists of evidence that other employees, *particularly employees outside the protected class*, were not disciplined even though they engaged in substantially identical conduct . . . ." (emphasis added)). In other words, the fact that Kroger allegedly treated

18

an older employee more favorably does little to support Duke's contention that Kroger targeted him for termination because of his age.

Finally, Duke contends that his negative evaluation and placement on a PIP were based on his connection to the failed audits, but his younger replacement also failed her audits and was not disciplined [Doc. 60 p. 32]. Duke was not fired, however, because of his negative evaluation or his placement on the PIP; he was fired for theft. As such, whether or not his replacement was placed on a PIP does not assist him in showing that the stated reason for his termination—theft—was really a pretext.

In sum, Duke has pointed to a number of facts that have questionable relevance and persuasiveness.[7] None of these facts undermine Kroger's investigation process or its belief that Duke stole the Tri-Chlor. Duke certainly has not demonstrated that Kroger's decision was "so unreasonable as to be disbelieved." *Sybrandt v. Home Depot*, 560 F.3d 553, 561 (6th Cir. 2009).

---

[7] Duke points to additional facts in his response that have been considered but will not be discussed at length. For instance, Duke points out that Dawson waited a week before reporting Duke's alleged theft [Doc. 60 p. 11]. Dawson appears to have done so, however, because Carr was on vacation and not in the office during that time span [*Id.*]. Next, Duke highlights at several points that Dawson, Carr, and Raines could have more thoroughly searched the pharmacy for the missing Tri-Chlor [*Id.* pp. 11, 15], but that does not counteract the fact that no admissible evidence suggests that the Tri-Chlor was ever found. On that point, one would think that Duke would have simply stated where the Tri-Chlor was, since he was the one that ordered it and put it on the shelf. Additionally, Duke points to an email from an asset protection supervisor, Levi Brehm ("Brehm"), who noted that Davis asked him to "run the store to see if there is anything that we can find to help solidify this case" [*Id.* p. 13; Doc. 60-8 p. 51]. Notably, neither Brehm nor Davis appear to have known Duke nor is there any indication of age-based animus on their part. This language is also innocuous, in that an asset protection team may certainly want to "solidify" the details of a case before moving forward with an allegation of theft against an employee.

19

The burden of proving pretext is steep, but it is not insurmountable. For instance, this Court recently concluded that a jury could find that an employer's decision to terminate an employee was not "reasonably informed" because, *inter alia*, the employee was never interviewed or provided with an opportunity to tell her side of the story. *Richardson v. Astec, Inc.*, 366 F. Supp. 3d 983, 997 (E.D. Tenn. 2019). On the other hand, in *Mastellone v. Publix Super Markets, Inc.*, 179 F. Supp. 3d 784 (E.D. Tenn. 2016), this Court credited the employer's "detailed investigation" during which the employee's supervisor "completed interviews of employees, collected statements from employees, inspected the workspace for evidence of what transpired, and compiled and examined company documentation, all to discern what transpired . . . ." *Id.* at 794.

In this case, and distinct from *Richardson*, Duke was permitted to tell his side of the story. As in *Mastellone*, Kroger's employment decision was based on interviews with employees, several searches of the pharmacy, and review of the security footage. Duke has not presented any compelling facts calling into question the neutrality or thoroughness of the asset protection department's investigation into the missing Tri-Chlor. This conclusion is bolstered by the admonition that an employer's investigation need not be perfect to establish an honest belief. *See Chrysler Corp.*, 155 F.3d at 807 ("[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned . . . ."). For the reasons stated above, Plaintiff has failed to establish that Kroger's basis for his termination was pretextual.

20

### 3.    Cat's Paw Theory of Liability

Finally, Duke also suggests that he can proceed under a "cat's paw"[8] theory of the case [Doc. 60 pp. 26-30].  Under this theory, a plaintiff may challenge an employer's improper treatment even if the ultimate decisionmaker was neutral and was not motivated by discriminatory animus.  *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008); *Christian v. Wal-Mart Stores, Inc*., 252 F.3d 862, 877 (6th Cir. 2001).  The cat's paw theory applies when a biased subordinate employee, who lacks decision-making power, influences the unbiased decisionmaker to make an adverse employment decision.  *Arendale*, 519 F.3d at 604 n.13.  By relying on a "discriminatory information flow, the ultimate decisionmakers act[] as the conduit" of the non-decisionmaker's prejudice—his cat's paw.  *Madden*, 549 F.3d at 679 (internal quotation marks omitted).  In determining whether an employee is a non-decisionmaker under cat's paw theory—that is, whether he is one whose animus may be imputed to an employer—a court should consider the "employee's ability to influence the ultimate decisionmaker."  *Chattman*, 686 F.3d at 353.

Duke contends here that, even though Ervin was a neutral decision-maker,[9] his decision was heavily influenced by Carr and Raines, who were not neutral [Doc. 60 p. 27].

---

8  "[T]he term 'cat's paw' refers to one used by another to accomplish his purposes." *Arendale v. City of Memphis*, 519 F.3d 587, 604 n.13 (6th Cir. 2008) (internal quotation marks omitted).  "The theory's name refers to a fable in which a cat is duped by a monkey into extracting some chestnuts from a fire, burning its paws in the process." *DeNoma v. Hamilton Cnty. Ct. of Common Pleas*, 626 F. App'x 101, 105 (6th Cir. 2015).

9  As noted, Ervin was 54 at the time of Duke's termination, and there is nothing in the record to call into question his neutrality.

21

To prevail on this theory, Duke must establish two elements: "(1) a non-decisionmaker, because of his age bias, took actions intended to have plaintiff terminated; and (2) those actions were the but-for cause of [the] decision to terminate plaintiff." *Mastellone*, 179 F. Supp. 3d at 795. Given this Court's previous pretext analysis, even if this Court accepts, *arguendo,* that Duke is able to prove the first element of this test, he is unable to satisfy the second element. Regardless of the intent of Carr or Raines, the fact remains that Ervin decided to terminate Duke for theft after a reasonable investigation into whether Duke stole medication from the pharmacy. After considering the evidence that Duke did in fact steal this medication and after ascertaining no other reasonable explanation for why the medication was missing, Ervin determined that Duke should be terminated for theft. Moreover, even though Duke highlights that Carr and Raines were involved in the investigation, the primary investigation was conducted by Bergum and Davis from the asset protection department. As such, there is no suggestion that Ervin was supplied with incorrect information about Duke from the non-decisionmakers—Carr and Raines. *See Chattman*, 686 F.3d at 353 (denying summary judgment under a cat's paw theory when the supervisor "both misinformed and selectively informed" the decisionmaker about the incident in question). Finally, the co-worker who initiated this investigation in the first place, Dawson, is even older than Duke. Duke therefore cannot demonstrate that Carr's and Raines' allegedly discriminatory actions were the but for cause of his termination.

In conclusion, Kroger has consistently indicated that it fired Duke for theft. Given that this is a reasonable ground for termination on its face, it is Duke's burden to prove that

something else was really going on here—i.e., the alleged theft was just an excuse to fire him for age-based reasons. Duke has not done so. Instead, he emphasizes a few isolated comments and factual discrepancies that ultimately have little bearing on his eventual termination for theft. As such, he has not established that Kroger's rationale for terminating his employment had no basis in fact or is otherwise pretextual. Kroger is therefore entitled to summary judgment on Duke's ADEA claim and accompanying THRA claim.

### C.     Associational Discrimination

Duke also claims that he was terminated by Kroger due to his association with his disabled daughter [Doc. 20 ¶ 94]. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . . [and is prohibited from] excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association . . . ." 42 U.S.C. § 12112(a), (b)(4).[10] Relevant here, the Sixth Circuit has recognized a "distraction theory" of associational discrimination, which is "based on the employee's being somewhat inattentive at work because of the disability of someone with whom he or she is associated." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).

---

[10] As with the age discrimination claim, the disability claims brought under the ADA and THRA are to be analyzed together. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 n.5 (6th Cir. 2008) ("Both federal and Tennessee disability discrimination actions require the same analysis." (citation omitted)).

23

As above, Duke does not provide evidence of direct discrimination so his claim must proceed based on circumstantial evidence. Turning first to the prima facie case of associational discrimination, a plaintiff must establish four elements:

> (1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision.

*Id*. (citing *Den Hartog v. Wasatch Acad*., 129 F.3d 1076, 1085 (10th Cir. 1997)).

Duke has a daughter with a permanent genetic disorder that impairs her mental abilities [Doc. 60 p. 7]. As noted above, Duke was qualified for his position as a pharmacist, and was subject to an adverse employment action when he was terminated. It also appears that Duke's co-workers were aware that Duke's daughter was disabled, including Carr, Raines, Dawson, and Ervin [Doc. 60-7 p. 73; Doc. 60-5 p. 125].

The tougher question, however, is whether Duke has raised a reasonable inference that his daughter's disability was a determining factor in the decision. To meet his prima facie burden, Duke points to comments made by Carr and Raines about his work performance [Doc. 60 p. 23]. For instance, Duke highlights that one of the five offenses outlined in his PIP was "[a]n excessive amount of time being spent on non-emergency personal activities" [Doc. 60-7 p. 16]. Following this PIP meeting, Duke sent a follow-up email that noted that Carr told Duke "the staff has noticed that you appear to be distracted at times." [*Id*. p. 29]. In this same email, Duke stated the "original complaint was my distraction due to the care of my daughter" [*Id*. p. 30]. This argument misses the mark,

24

however, because even if the disability status of Duke's daughter was a determining factor when deciding to place him on a PIP, there is still no indication in the record that these comments are related in any way to Duke's termination for theft. Moreover, the PIP included five performance issues,[11] only one of which could possibly be a reference to his daughter [*Id*. p. 16]. Duke does not dispute the validity of these other complaints. *See Stansberry*, 651 F.3d at 488 ("[The plaintiff] offers nothing to show that his termination was related to his [family member's] illness instead of his perceived unsatisfactory performance.").

As such, Duke has not met his prima facie burden to show associational discrimination. Even if he had shown a prima facie case, Duke would still be unable to prove that his termination for theft was pretextual. For all of the reasons outlined above, Duke has failed to demonstrate that his termination resulted from anything other than Kroger's investigation into his alleged theft of Tri-Chlor. Relevant here, Duke argues that the temporal proximity of his ADA complaint in June 2017 and his termination in August 2017 indicate that his firing was pretextual [Doc. 60 p. 32]. As the Sixth Circuit has noted, "suspicious timing is a strong indicator of pretext when *accompanied* by some other, independent evidence." *Hartman v. Dow Chem. Co.*, 657 F. App'x 448, 455 (6th Cir. 2016) (quoting *Seeger*, 681 F.3d at 285). As discussed, there is no evidence in the record indicating that Duke's termination for theft was pretextual. Rather, he was fired after an

---

[11] These other issues included tardiness, excessive breaks in number and length, failure to treat associates with dignity, and improper delegation of tasks to student with insufficient oversight [Doc. 60-7 p. 16].

25

investigation was conducted by Kroger's asset protection team. Moreover, the temporal theory does not particularly apply to the facts at hand. The investigation in question was triggered by Dawson's complaint, but Duke has presented no evidence that Dawson ever made disparaging comments about Duke's association with his daughter.

In conclusion, even if this Court finds that Duke has carried his prima facie burden, Duke has again failed to demonstrate that his termination for theft was merely a pretext to terminate him based on his association with his disabled daughter. Kroger is thereby entitled to summary judgment on Duke's ADA claim, and accompanying THRA claim.

### D. Retaliation

Finally, Duke claims that he was terminated by Kroger in retaliation for his complaints of age and associational discrimination [Doc. 20 ¶ 94]. Both the ADA and ADEA have anti-retaliation provisions, and the Court will consider these retaliation claims as one. *See* 42 U.S.C. § 12203(a) (ADA); 29 U.S.C. § 623(d) (ADEA).[12] "The *McDonnell Douglas* burden-shifting framework also applies to retaliation claims." *Martin*, 548 F.3d at 412 (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir. 2007)). To establish a prima facie case for retaliation under the ADA and ADEA, a plaintiff must establish four elements: (1) he engaged in protected activity; (2) the employer had knowledge of his protected conduct; (3) the employer took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the

---

[12] Additionally, "retaliation claims under the THRA follow federal law." *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 300 (6th Cir. 2015).

Case 3:18-cv-00375-TAV-HBG   Document 69   Filed 09/01/20   Page 26 of 28   PageID #: 2556

adverse employment action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (ADA); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (ADEA).

In the present case, it appears to be undisputed that Duke made several complaints of age and associational discrimination—i.e., he engaged in protected activity. Kroger employees, including Carr and Raines, were aware of these complaints. Similarly, it is not disputed that Duke was fired—i.e., he suffered an adverse employment action. The question remains, however, whether there was a causal connection between Duke's complaints and his termination. A plaintiff can establish a causal connection in a retaliation case by providing evidence "sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009) (internal quotation marks omitted) (alteration in original). As above, Duke relies on the temporal proximity between his complaints and eventual termination [Doc. 60 p. 22]. "Temporal proximity between the protected activity and the adverse action may support an inference of causation . . . ." *Almanza*, 2018 WL 5262092, at *10. As discussed at length, however, the *cause* of Duke's termination was that Kroger believed that he took a bottle of Tri-Chlor without paying for it—an allegation completely distinct from his complaints of age and associational discrimination. Furthermore, the source of this allegation was Dawson, who apparently was not even aware of Duke's complaints.

Even if Duke were able to meet his prima facie burden, he would still run into the familiar issue of pretext. There is no compelling evidence in the record to suggest that Duke's complaints of discrimination motivated or otherwise influenced the theft allegation

27

and subsequent investigation.  As such, it is unclear what facts would allow a reasonable jury to infer that Kroger's proffered reason for Duke's termination was pretext.  For all of the reasons outlined in more detail above, Kroger is entitled to summary judgment on Duke's retaliation claim as well.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's objections [Doc. 63] will be **SUSTAINED**, and Defendant's motion [Doc. 46] will be **GRANTED**.  Plaintiff's claims will be **DISMISSED**.  A separate order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE